I'm Kevin Arnold. I'm representing Calvin Fisher and Penny Fisher in this matter. I'd like to reserve five minutes for rebuttal. The Court is aware that this case involves two actions below. The Fishers believe that the first action presents a threshold issue to the second, and the threshold issue is whether or not a proper review is conducted. I have only worked on one ERISA case, and this is it, so I have seven years' experience now, albeit all in one case. I was a young lawyer when Pilot Life came down, and I was studying for the California Bar before I went to work for an insurance defense firm. And when Pilot Life came down, it wiped out a lot of cases, and it began with preemption, and then the litigation turned to things like the standard of review. Usually the losing party wanted to try to get outside the record, and this body of law has developed. But the one thing that's very, very clear in ERISA, the first time you get into it and you look at it, number one, you need to think fast because you've only got about 60 days to figure out what's going on, because otherwise your time is going to run and the record's going to close. So the one thread you see in case after case after case is a closed record. And the reason that that's a fundamental notion in ERISA is because when Congress decided to take away all common law remedies, what did it do? It replaced all of the common law remedies with ERISA, which provides a remedy to sue for benefits if they're wrongly denied. So that's where we come in the door on Fisher 1. The case was decided by, or the claim was decided by Aetna on, at the administrative level, and putting aside the issues about whether their review was proper and whether they engaged in the process as they're supposed to, the bottom line is when Aetna went up to the district court, it had complete control over what was put into the record, as in all cases, because every ERISA case has one thing in common with the other, and that is it's a denied claim for benefits, because it wouldn't exist if the claim were granted. You know, the claimants are the ones bringing these cases. And the common thread that jumps out at a lawyer who first steps into the ERISA arena is this concept of a closed record. And Aetna argues in this case that the district court did not consider the intoxication evidence that Aetna put in front of it. That just flies in the face of what actually happened down at, in Fisher 1 at the district court, because the district court cited the evidence, described it, and in fact went so far as to say that that's the basis Aetna decided to claim on. But in any event, the two errors the court made were, number one, the Fishers were entitled to have a remedy in this case, and the remedy was a suit for benefits. And so what the Fishers did was they filed a very brief, I think it was a five-page motion for summary judgment that set forth Aetna had conceded eligibility. The perfected claim was in the record. There was nothing more that had to be done, and the claim should be granted. And what, and that related to what policy? Aren't there, what policy are you claiming is applicable? Well, see, that's what's interesting, Your Honor. The problem we have in this case is we are litigating an insurance policy on a closed record. We So what policy do you think your clients are entitled to recover on? The record reflects that Jeffrey Fisher was enrolled for a $500,000 benefit. The policy that has that benefit specified in it is the 2002 policy. Here's the problem. It's undisputed that Mr. Williams became the president of Aetna on May 27th of 2002. This is almost simultaneous with Jeffrey Fisher becoming employed at Triad Hospitals. We know that at some point Your client has already accepted, has it not, $80,000 in the automatic life insurance based on the 2002 policy? No, it's based on a concession of eligibility by Aetna, and that's what the joint report said. You know, Your Honor, it's very critical to note that no one, not Aetna, not the court, can point to anything that the plaintiffs said in the case that was inconsistent. Did the plaintiffs ever say the 2002 policy is the only applicable policy? It's Aetna's concession of eligibility which stopped the whole process of what policy applies or anything else. If Aetna chose to concede that, that doesn't mean that the Fishers are then stuck with their version of events. And by the way, the other critical document that Let me just get this straight. Some policy applies. Does everybody agree on that? Well, can I go through the actual process, though, because You know, we got a lot of questions, so just answer my question. Does some policy apply? You can't tell from this record, because the 2002 Maybe no policy applies? Well, no. The 2002 policy has the benefit in it. That's agreed. No, I'm just saying, is there some policy that he's covered under? In your view. Maybe that's just too abstract for me to ask you. I mean, that's what we're talking about here is the 2002 to 1999 policy. Your client took $80,000. Would that benefit be available under the 1999 policy? I'm not sure. I think it was, because I think there was a benefit for four times pay in the 1999 policy, plus the basic coverage, I think it was called, so that would total $80,000. And then when it comes to the accidental death and dismemberment Under the 2000 policy, what would he be entitled to? For AD&D coverage? Under the 2002, yes. $80,000 in life insurance, $500,000 in AD&D. However The AD&D is not in the 1999 policy. That's correct. Right. But, and this is a big but, what they did was they enrolled Jeffrey Fisher for when Aetna amended, or excuse me, not amended, but prepared the 2002 policy. Because it's got the signature of the president of Aetna who didn't become the president until May 27th of 2002. And so sometime between May 27th of 2002, keeping in mind that that second policy has a date of October 15th of 2001, effective January 1st of 2002. But the person signing that policy didn't become the president of Aetna until May 27th of 2002. We don't know, between May 27th of 2002 and June of 2003, when the rider was executed. We don't know when the policy was prepared. But we know it couldn't have been before the end of May of 2002. So it's backdated by at least, what is that, seven months? We don't know if that policy could have been prepared after Jeffrey Fisher was already dead, yet we know that he was enrolled for the coverage. Now, this is the uncertainty created by Aetna because they're backdating an insurance policy. And you can't simply look at that policy and say, but, Mr. Arnold, isn't that the policy where the dates apply? I don't know when that policy was produced. And by produced, I mean printed, actually physically produced, because it's backdated. We don't get any discovery. This is a locked-down record where the plaintiff isn't entitled to ask any of these questions, although we asked, because in the record there are three letters from me to Mr. Griffin saying, what's the effective date of that policy? They wouldn't even answer the question. Well, let me go back to eligibility. If the 1999 policy is applicable, what about this two-month employment provision? How does that figure in? Well, the complaint in Fisher 1 alleged that Jeffrey Fisher had been an employee for more than two months. Then there's the draft joint report, which is in the plaintiff's excerpts of record. In the draft joint report, Aetna was the one who prepared it, but obviously we had discussions about it, so I had input into the issues. And it says, plaintiffs contend that Jeffrey Fisher was employed at Triad for more than two months. The critical question in Fisher 1, when it came to eligibility, at least, was, is it the two months that Aetna says in the policy, or is it the active payroll status that's in the summary plan description? And again, when a lawyer steps into one of these cases, insurance cases are not that difficult. It all comes down to what's in the policy. What does the policy say? So the first thing a lawyer needs is the policy. I didn't have any idea why they're denying it on this two months, because it didn't match what was in the summary plan description. And so that's why it was so critical to get the policy from Aetna. Multiple requests to Triad and Aetna, and they played this game. Get it from them, get it from them, and I never got it. They did the same thing in Fisher 2. Because that record reflects, it's in the administrative appeal, that when this issue of this rider came up, I called Triad, because Aetna wouldn't respond to my letters and say, here's when we amended it. So I called the Triad, and I said, what's going on with this rider? The first thing the woman says to me, and this is in the letter, I'm not going outside the record, is, who are you dealing with at Aetna? And I gave her the name. And then what happens is, okay, I'll get back to you. Well, she obviously called the person at Aetna, ignored me. Several weeks later, I call her back. I say, can you give me the answer now? And she says, you're going to have to get that from Aetna. So insurers, or insurers, I should say, have the luxury of doing this, of creating a record that forces the plaintiff to litigate questions like this without discovery, without knowing the truth. But we do know in this case that that policy could not have existed before May 27th of 2002. And so once you establish factually that it's backdated by at least seven months, we don't know whether it's backdated by as much as 16 or 18 months. The other thing that's interesting about this is, in the administrative appeal, Aetna disavowed the summary plan description prepared by Triad. In their final letter, they said, we didn't have any role in preparing that. In fact, Aetna said in that letter, and I forget the woman's name, but the second letter, the final denial letter in Fisher II, she said that once I raised that issue, they looked into it and they discovered that Triad had prepared a summary plan description. What are the odds of them having discovered that in 2007 after being in litigation over this? But again, whatever they say, they put in writing and they put in the record. So they put in this nugget there that would allow them to say, well, if there's anything in that SPD we don't like, we didn't have any role in preparing it, they unilaterally distribute it. Then their counsel turns around on the appeal and says the summary plan description, SPD, is actually evidence of Triad's request for this policy. And therefore, it eliminated the requirement that Triad had to sign something. So they're trying to get around Curtis Wright Corp., which says you have to follow strictly what you put in the policy. And the Supreme Court, Curtis Wright, didn't really take a position on what they have to. They said, we don't care what you do. You just have to have it in writing. You have to designate the person who has the authority to amend the plan. But what the Supreme Court did say very, very clearly, is whatever level you put in there, we're going to apply the trust law principle that you have to follow it. And that's what's at issue in this case when you get to Fisher 2. But the question is, how do we get to Fisher 2? Do we let a district court go outside the record to decide a remand issue? That's ultimately how you get to Fisher 2. And the problem is to get there, you have to ignore the Fisher's motion for summary judgment, because the trial court's basis in Fisher 1 for denying the summary judgment motion was inadmissible evidence. It was the intoxication evidence. It's the, it's cited by the court in its order for the basis of denying the summary judgment motion because it said, I can't grant the motion. I have to send it back to the plan administrator on this new issue that was outside the record. That denied the Fishers their remedy. Their remedy was a suit for benefits. And on that record, the Fishers should have won. And the Fishers didn't win because the court went outside the record. Now, when you consider the fact that Aetna has every advantage, and they can prepare the record they want, and then stop, that's exactly what they did here. They thought they'd won when they did that in Fisher 1. You might want to reserve the remaining portion of your time. Oh, is this the whole 15? Yes, as I explained at the outset. Okay. I will reserve the last two minutes then. Thank you. How many alcoholic drinks and how short a time does someone have to have before their drunk driving death isn't an accident? Is it five drinks in an hour? Seven drinks in an hour? Nine drinks in an hour? Jeffrey Fisher had 10 drinks in the hour before he got into his Jeep with a .25 BAL. Drove westbound on Interstate 10. Let's just assume for talking purposes that if the right policy applies, that he might be excluded on that point. I think we need to unscramble the policies first. Okay. And that's where... I can do that. You're saying, are you saying that the 1999 plan applies but with the 2002 exclusion? No, ma'am. Okay. At this position is the 2002 policy applied. We made a mistake during the initial claim and applied the eligibility provision for the 1999 policy. Once we found out and discovered that mistake at the prompting of the Plaintiff's counsel, we corrected it. We paid the benefits that are automatically due under the 2002 policy. We paid them with interest. We offered to pay attorney's fees. And then we asked the case to be remanded so that a coverage determination could be made under the 2002 policy. This court, the prior panel of this court on Fisher 1, when it dismissed that appeal, said that the appeal, the case was going to be remanded back to the plan administrator to decide coverage based on the correct policy. And I'm quoting from the Fisher 1 panel memorandum decision. The district court simply declined to rule on an issue the plan administrator did not reach, namely whether benefits were due under the correct plan, and remanded for the plan administrator to make that determination in the first instance. In doing so, it, meaning the district court, did not rely upon evidence outside the record. And then this court went on to say, rather, the exclusion question, whether the intoxication provision would apply under the 2002 policy, is a new determination based on what all agree is the correct policy. What all agree is the correct policy. That's what this court said when it was up here on Fisher 1. We go back down to the district court. The district court applies her discretion to say that the plaintiffs are judicially estopped from somehow claiming that some other policy other than the 2002 policy applies. She exercised her discretion appropriately. So Etna's position is that the 2002 policy applies. Jeffrey was automatically eligible for life benefits regardless of how drunk he was. Etna's position is under the 2002 policy, his death wasn't an accident, so there's no coverage. Even if his death was an accident, the 2002 policy has a specific exclusion that excludes drunk driving deaths. That's Etna's position. Now, if we take a step back and we say, well, what if the 1999 policy applied? Well, if the 1999 policy applied, there would be no eligibility, at least according to Etna. In its discretion, it would have said there's no eligibility. The employer actually, when it submitted the claim on behalf of Jeffrey, said, we know there's not going to be any eligibility here because the employer also was operating under the mistaken, mistake that the 1999 policy applied. But even if there was eligibility under the 1999 policy, there isn't. This death was not an accident. It was not an abuse of discretion for a planned administrator to think that somebody with Jeffrey's blood alcohol level dies in a drunk driving accident. It's not an accidental death. And I've cited the court to the cases. Every district court, excuse me, every circuit court that has addressed that issue of whether or not a drunk driving death is an accident under an ERISA policy has said, it's not an accident. It's not an abuse of discretion for a planned administrator to say that such deaths are not accidental. Now, if we take a step back and we look at the policy question even more, let's say. Under your view, Etna would win under either policy. Etna would win under either policy, although under the 1999 policy, arguably, we've been entitled to our money back, but. And under the 2002 policy, you wouldn't, if you're right on 99, you wouldn't have to get to the exclusion, but if you were wrong on 99, you'd get to the exclusion. Well, under the 2002 policy, it's not an accident. Remember, these policies only cover accidents. It's not an accident. But even if it was an accident, it's excluded, specifically by the 2002 policy. But let's take a step back and let's say, let's give the plaintiff the benefit of the doubt. Let's put the two policies together and say, we need to put these two policies together and then we need to interpret all the terms consistently and give the plaintiff the benefit of the doubt. Well, he'd be eligible under the 2002 policy. Still wouldn't be an accident under the combined policy. And under the combined policy, you'd still have the intoxication exclusion. Because the 1999 policy is silent as to an exclusion. The 2002 policy specifically excludes it. So there's no conflict. Even if we were to somehow put all these policies together. So no matter how you look at it, Aetna wins. Aetna did the right thing here. It realized it made a mistake. It paid the benefits right away, paid interest, offered to pay attorney's fees. And what happens? It gets embroiled in litigation for seven years. I want to point the court to the Ninth Circuit case law that says it was appropriate for the district court in Fisher I to remand this case back to Aetna to decide benefits under the 2002 policy. It's the Saffel case and the, I can't pronounce the case on it, but the Visano case. Both of those cases specifically say that in the ERISA setting, when the plan administrator has abusive discretion and a new issue pops up, the appropriate remedy for the district court is not to decide that new issue, but to remand it back to the plan administrator to decide it in the first instance. In the Saffel case, the district, the plan administrator applied the wrong definition of total disability. The district court went on to say, you applied the wrong definition, and then the district court went on to apply what it thought was the correct definition. On appeal of the Ninth Circuit, the Ninth Circuit reversed the district court and said, you were right, that that's the right, you were right about the definition of total disability, but you were wrong to decide it yourself in the first instance. You should have sent it back down to the plan administrator to apply its discretion in the first instance with the correct definition. Same thing that happened in the Visano case. There were two issues that the plan administrator had to address. The first was whether or not the claimants were employees. The second was whether or not, if they were employees, they were on the U.S. payroll. The plan administrator said, they're not employees, so it never got to the second issue. It went up to the district court. The district court said, yes, they are employees. And then the district court went on to decide the second issue was, are they on the U.S. payroll? The en banc decision of this court said, wait a minute, you can't go on to the second issue. You've got to remand it back to the plan administrator. It has to apply its discretion on the first instance. And both courts say that it makes sense. In this case, that's what happened. You had an eligibility decision that was made, no eligibility. Even the employer said there's no eligibility. They stopped their decision tree analysis. They denied benefits. That makes sense. Happens all the time. And if you had an insurance company having to run down the decision tree every single time for every single claim, yeah, we know he's not eligible. We know the employee tells us they're not eligible. But let's see about coverage. Let's go through this. Let's go through this. Let's go through this. How much time is that going to add? How much expense is that going to add? It just doesn't make sense. What happened here made sense. Aetna made an eligibility decision, albeit mistaken. It denied the claim. And when it found out about its mistake, it paid it and said, give it back to us so we can decide the eligibility decision. Unless this court has any other questions for me, then on behalf of Aetna, I would ask the court to affirm the district court's decision and say that Aetna exercised its discretion appropriately. Thank you. I don't suppose Aetna would give me their additional time, so I won't ask for it. I don't really think it works that way, but you have two minutes. Thank you, Your Honor. You know, there was mention of the prior panel, the prior panel declined jurisdiction. The prior panel illustrates the problem in this case. What exclusion? You know, they said, oh, it's just going back to look at the exclusion. What exclusion? How do you get outside the record? That was the issue presented. And, you know, I said in our brief, it begs the question. It's a classic case of begging the question, that the court didn't go outside the record when it just was remanding for the intoxication exclusion. That's what was outside the record. So the prior panel didn't have jurisdiction, could have made a ruling that's binding on this panel, and I'd suggest that's a rule. You can't challenge that here. The panel said what it said. Correct, but when you decline jurisdiction. And we're bound by that. My understanding is a court that declines jurisdiction doesn't have jurisdiction to make any ruling. What the court said was it didn't meet the requirements of the Williamson case, and there had no jurisdiction in any event. It was also under the context of that and not telling anybody that they had retroactively amended the policy. And when they put that 2002 policy in front of the court in Fisher 1, they didn't put the rider in there and they didn't put the policy contents page, the only two documents that indicated retroactivity. That's not fair to the Fishers to have them be permitted to do that and mislead the court and counsel on that issue. Abuse of discretion on a – you know, they ignore their choice of law provision when it comes to what constitutes an accident. They also ignore what Padfield says. You know, Padfield is where a man puts a ligature around his neck to choke himself out and does, and that's an accident in the Ninth Circuit. That's fully consistent with Wichman. They just get the Wichman analysis wrong. And many courts have pointed to the Ninth Circuit and said the Ninth Circuit gets it right in Padfield. So those don't give that cover here. The question is when you have an insurance company that enrolls someone for a benefit but doesn't properly amend their policy, in fact, doesn't even have the policy in existence at the time they enrolled for the benefit, who bears the burden of that uncertainty? They enrolled him, but they didn't prepare the policy until sometime well after he was enrolled. We don't know when because we don't get discovery, but we should be stuck with the record as it exists, and this case never should have been remanded using evidence outside the record. That's improper in Banuelos and the other case that's cited apply. Thank you. Thank you. I'd like to thank both counsel for argument this morning. The case just argued, Fisher v. Aetna, is submitted.
judges: Zilly, Hall, McKeown